Case number 19-4233, NTECH LTD v. Marcia Speece. Arguments not to exceed 15 minutes per side. Mr. Bowers, you may proceed for the appellant. Thank you, Deputy Milton. Your Honors, good morning to you all. My name is Charles Bowers. I represent the appellant in this case, NTECH Ltd. I have reserved three minutes for rebuttal. Your Honors, we're very pleased to be in front of the Court of Appeals on this case this morning because this case is not little more than an extension of the divorce proceedings, to quote the trial court and its opinion. It is instead here today a case simply about the amount and type of evidence that is sufficient to overcome a motion for summary judgment and by extension a motion for Civil Rule 11 sanctions. What I intend to present to you today, which I believe is crucial to your de novo review of this situation, are the multiple layers of evidence that were presented to the trial court that upon a cool deliberation will demonstrate that the grant of summary judgment and for sanctions should be overturned. Along the way, I intend to point out the areas where the trial court lost its direction through failing to recognize a fundamental and material dispute of fact and the significance of that dispute, failing to consider expert testimony, failing to consider admissible evidence where there was no objection based on hearsay made by appellee, and by making credibility determinations not even based upon anything the court saw but based upon another court's determination in another case. Now, neither appellee nor the trial court have taken legal issue with the types of claims that were brought in this case. If I could ask you a question on that. Of course. On the Computer Fraud and Abuse Act, what sections are you claiming were violated by your opponent? Yes, Your Honor, and I'm just going to refer to my notes to make sure I get that right for you. It's 1030a2c for intentionally accessing a computer without authorization and thereby obtaining information from a protected computer, and 1035b and or c for intentionally accessing a protected computer without authorization and as a result, recklessly or otherwise, causing damage to that computer. And you refer to both of those in your complaint as separate counts, is that it? Or are you a little confused about the legal theory you had? Well, the legal theory was always the same, which is that the ENTEC business computer was removed from the home, that when it was returned, it was both missing information and had been damaged and had been accessed for information. So all of those sections apply. Well, wouldn't you be required to set forth in your complaint the specific provisions under which you're seeking recovery? And were both of those pled in your complaint? I know it's a notice pleading standard, Your Honor, and I don't think that the specific sections needed to be pled. It was certainly set forth that the computer came back damaged and had been accessed and that the claim was being brought under the Computer Fraud and Abuse Act. I don't think there's any deficiency with the complaint, nor has there ever been any kind of challenge to that. There was no motion to dismiss or anything like that. The issue on summary judgment has always been the amount and the sufficiency of the evidence that was presented to the trial court. And so along those lines, what are these layers of evidence that I spoke of? The first comes from Brian Speece, the owner of ENTEC Limited, based on what he knew and what was corroborated by expert testimony that was not considered by the court. Brian Speece knew his computer. He built it. He knew that it was password protected and who had access to it and who used it, and that was not either Apelli or his son. He saw that it was gone shortly after the family left the family home. He knew due to its size, especially the 30-inch monitor that went with it, that it was an awkward thing to carry. It would take two to get out the door. Most significantly, two weeks after it left, he sends e-mails to Apelli saying, I need my work computer returned. He very specifically describes in these e-mails the fact that this is a computer that he put together himself for the work, for testing, and it needed to be returned. Two e-mails along those lines. When he gets a response, the response he receives is that the computer that you requested, not any other computer, the computer that you requested is being returned and can be picked up at Apelli's divorce counsel's office. Brian Speece goes there personally to pick up that computer. He gets it back. He opens it. He sees that the rotary hard drive is missing. He sees that the solid state hard drive, when he tries to operate it, has been wiped. Does he indicate, is there evidence that you would point to indicating that those observations were made contemporaneous with the delivery of the computer to him when he went to the lawyer's place? He did not perform those functions at the lawyer's office. He just wanted to get it out of there. When did he make those observations? When he got them back. So immediately upon getting it back, is there some statement of the time frame, I'm asking? I think it's in his affidavit, it's in a fairly short amount of time upon getting it back. Whatever amount of time, whenever he tried to fire it up, essentially, is when he would have found out that the solid state drive had been wiped. He did recognize at the attorney's office that the size of the monitor matched the size of his monitor. The 30 inches, which is unique. And he did recognize at the attorney's office that the size of the container that it was all housed in, the tower is what they call it, was the same size as his. The wiping of the solid state drive was confirmed by the computer forensics firm called Vestige. And they also confirmed that that wiping most likely took place through an application designed for that purpose. And that what it did is it rendered the solid state hard drive, not the rotary hard drive, but the solid state hard drive almost like it was factory fresh, just devoid of any information. The next step is Brian Spies knows that when he's receiving discovery requests in the divorce case, that the basis for those requests could only be based on information from that Antec computer because he knew what was on there. And he recognized the requests as being from that information, as well as the threats of disclosure of Antec information that were out there. I understand the district judge was relying on various doctrines to exclude various pieces of evidence. And you have only a few minutes left. Do you want to address any of those rulings of the district court or essential points to the district judges? Thank you, Your Honor. I would. I think crucial is that the court excluded the affidavit of Janet Spies. We call her Grandma Spies in the briefing because she was Mr. Spies' mother. And she testified that she confronted the son on June 19th, 2015, and asked him, did you take the work computer? Your father's very concerned about that. He needs that back. He said, Mom, instruct me to remove that computer. And if you want to get it back, you're going to have to work through her. The trial court entirely on its own, without any objection being made on hearsay grounds, determined that this was inadmissible hearsay and didn't consider it. I would note that in the appellate briefing in this case, appellee has not made any argument that this was inadmissible hearsay. And the reason for that is it wasn't hearsay. It was instead the statement of a co-conspirator made in the course of a conspiracy. It's also not hearsay because it explains why Brian Spies reached out to his then wife and the appellee in this case to get the return of the computer. And even if it was hearsay, which it wasn't, it falls under the exception of a statement made against Ian Spies' own interest. So is Ian then the co-conspirator? Is that what you're saying? He is indeed. Was he an adult at the time or was he a minor? He was at the time of all this was happening, he was 16, I believe. So a minor. So he can be a co-conspirator even if he's a minor? Yes, he can. How about if you conceptualize it as an agency theory as opposed to a conspiracy theory? Well, it could go either way. I mean, certainly based on the testimony of Janet Spies, the appellee directed her son to gather up the ENTTEC computer and bring it to the home. Now, the trial court also, I think, indicated that it felt that there was not enough evidence of Janet's, excuse me, Marcia Spies, the appellee, taking any direct action on her own. And I want to address that because if you look at the testimony of Ian Spies, he said that when this computer got home, at some point when he bought the parts for a new computer, he copied the rotary hard drive from one computer to the next. He disclaimed taking any action with regard to the solid state hard drive that was in that ENTTEC computer. But it was the solid state ENTTEC hard drive that was wiped, confirmed by vestige. I'll refer you to the record pages of this testimony. They're 632 through 633. So if Ian did not cause the wiping of the solid state hard drive, who did? It would have to be the only other person who had access to that computer. And that was appellee. Now, the final issue that I'll probably end up discussing more in my rebuttal period is the fact that the trial court completely ignored the fact that there was a tremendous factual issue here as to whether or not the ENTTEC computer was ever even removed from the home. That was a major error. And it's a quintessential issue of material fact that the court just simply wiped away by indicating that it was undisputed. And that was a tremendous error. Thank you. Thank you. Your mic is not on. We still cannot. I'm sorry about that. Good. Good. Good morning. On behalf of Marcia speech, Craig Cavalli for appellee. Obviously, there is a fundamental difference of opinion on what the issues are before the court. We believe the trial court absolutely got it right when it determined that this litigation is little more than an extension of a hotly and bitterly contested divorce case. This is an action by a husband or husband's company against his wife in the midst of that divorce. The alleged perpetrator of the actions are really focused on the party's minor child, Ian, who admittedly removed. Is he a minor? Is that in the record? I mean, it seemed to me unlikely he was 16 since I believe it was in the record that this all happened around the time of his graduation from high school. Yeah. Your Honor, I believe Mr. Powers inadvertently got that wrong. He was 18 and not yet graduated from high school. And was was 18. That is my understanding that the computer was allegedly removed. I believe that to be true. He was not yet graduated from high school. And as you know, from from the record, he was living in the marital home until I believe it was May 30, 2016. He was coming up on his freshman year in college, which is an important detail because this computer. So he didn't graduate from high school, but he's about to start college. In May, on May 30th of 2016, he was about to graduate or had just recently graduated from high school and was planning to begin college in the following fall in Rochester, New York. The computer that was removed in every understanding of what was in dispute in this case from the day I first appeared in a pretrial before the lower court in November of 2016. The focus here was whether or not the computer that was removed was, in fact, an end tech computer, a computer that Mr. Chase claimed contained his confidential business information or whether, in fact, it was a computer that Ian, the party's son, had utilized for his personal reasons, including gaming, accessing music, photographs, that sort of thing. So to cut to the chase, why isn't there a factual question as to whether the computer that was removed was the end tech computer or Ian's computer? Because the only time when that factual dispute came about was at a point in time after Mr. Chase had already testified inconsistent with his affidavit. The point of this case is that this this so-called question of fact is, in essence, a manufactured number of facts that Mr. One piece of evidence that your opponent just referred to were the emails that Mr. Spies sent to Mrs. Spies asking for the end tech computer to be returned. And she said that computer is at your account at her counsel's office, her divorce counsel's office. Why doesn't that alone establish a factual question? Well, because the computer that was if I could just give you a minute, give me a minute. It requires some reference to some other testimony. We know from from Mr. Ian Spies testimony that he took painstaking steps to remove his personal data from the computer to return it to return the the computer that was being requested to his mother to drop off at the law firm for being picked up by Mr. Spies. It's it's it's not an issue of credibility. It's a it's a question of plausibility. Why would a young boy or young man at the time go through the painstaking steps to purchase and assemble a computer to remove data from it and then return it? If, in fact, the computer that was being returned was in the first instance, the business computer that was in the basement on the other side of the basement in Mr. Spies office. So it strikes me that you're trying to make this a credibility issue where you're saying your your client's position is the more credible one, which it may well be. But I still struggle with why there isn't a factual issue here as to whether the end tech computer was removed, whether the end tech computer was returned to the divorce counsel in its proper state or not. And you're pointing to one piece of evidence and your opponents pointing to other pieces of evidence. And what clearly somebody is either mistaken or lying in terms of the underlying parties here. But it's not for us to decide that, nor is it for the district judge. If a jury trial is requested, it shouldn't be decided on summary judgment. Thanks, your honor. I, I, I believe there's a distinction between the issue of credibility of witness testimony and the plausibility of a fact pattern that's being offered to the court. And I think that it is well within the trial court's determination on summary judgment to determine whether or not the theory that is being espoused by the non-moving party, in this case, and attack is, in fact, plausible. Excuse me, Mr. Cavalli, but that is not the district court's role on summary judgment. The district court doesn't determine whether evidence is plausible. It doesn't. That's a part of evaluating credibility. I mean, the argument you make just flies in the face of the law with respect to summary judgment and what it is. I think you better try something else. But I believe we did cite some cases, your honor, and in our brief, and if I can pull it, I will before the end of my argument, where the district court certainly has the authority to determine at the summary judgment stage, whether or not the facts being argued are in fact plausible. There is a distinction between credibility and plausibility. But to get back to your question, and maybe this comes back to Judge Moore's question at the very beginning to try and illustrate. You know, when did Mr. Spies purported really realize that the computer that was returned to him had a missing hard drive or was wiped? Well, we know. We know that when Mr. Spies testified in October 2016, which, by the way, is four months after this case was filed, that he testified in his divorce case that the machine had every component in it, that it had everything that counted that matters in it. And then, so the disputed fact that is now being raised is a manufactured fact that came up in an affidavit, which should be tossed out as inadmissible and sham because it is not consistent with his prior testimony. And there has been absolutely no explanation offered either at the trial court or by Mr. Bowers in his appellate brief or even in his reply brief to explain the inconsistent testimony between his prior testimony and what he said in his affidavit. It was in October of 2016 that he testified in the divorce case that when he received the computer, all of the components that mattered were there. He didn't say it was missing a hard drive. You'll notice well that in the complaint in this case, there's no reference to a missing hard drive. Is it plausible to conceive that in a replevin, in a conversion case, and even a claim under the Computer Fraud and Abuse Act, that notice pleading would not require a plaintiff to state that there are missing components from the drive? This was a manufactured fact, and that's the only disputed fact that the trial court was decidedly unwilling to consider because it was something that was inconsistent with Mr. Spee's prior testimony. I'd like to address, if I may, unless you have further questions on that topic, the hearsay arguments that Mr. Bowers raised. At the trial level, admittedly, the appellee's focus was that the affidavits that created this so-called issues of fact were sham and should be not considered. We didn't go into the precise details of every single paragraph, but in the one paragraph that the trial court looked at, which references this conversation between Janet Spee's grandmother and Ian, the son, I would contend that there is no applicable exception to the hearsay rule that would allow such testimony because there was, in fact, no determination of a conspiracy. If you look at the complaint as well, the initial allegations concerning conspiracy included reference to various John Doe defendants. It was always understood, based on the language contained in the complaint, that the alleged John Doe's co-conspirators were, in fact, lawyers that were representing Mrs. Spee, who were alleged to have had an affair with Mrs. Spee. The trial court assisted Mrs. Spee in extracting or removing data from a computer, not taking a hard drive, even, but extracting or taking data. While Mrs. Spee preserved her rights of confidentiality in terms of her communications with her counsel, the trial court did, in fact, conduct an in-camera review to see if there was a crime-fraud exception and specifically concluded in prior rulings at the trial level that there was absolutely no evidence or any indication that there was any efforts by counsel to extract any information from the computer. So back to who were the alleged conspirators, now Mr. Bowers is suggesting it was Ian. All right, so Ian, who admittedly was just all of 18 years of age and about to graduate from high school, this is the son of parties that are going through a divorce proceeding. You know, this is a situation where he's caught in the middle, just as children tend to be when parents have a difficult divorce. He was not a co-conspirator. Ian's a child of parties. Parents were going through a divorce, and he was simply collecting his prized belongings when he was at the house. He was collecting, you know, his personal data, schoolwork, photos, music games, to characterize this young man as a co-conspirator, which the trial court did not, and I would submit that this court should not, would be a tragic precedent that children that are in this situation going through a divorce can be named as co-conspirators. What about agents? The agency wasn't even alleged, but I would say even agents of their parents. You know, this would be a tragic precedent if this court were to determine someone like that is a co-conspirator, and therefore, if he is not a co-conspirator, there would be no applicable exception to the hearsay rule. What about Judge Gibbons' question about if he were an agent of his mother? And that seems to be what his grandmother, Janet, is saying in this affidavit. Well, Would that allow the affidavit to come forward? I would, I would say that the, well, there were three arguments raised under the hearsay rule. One was first that he was a co-conspirator. I addressed that. The other was that it was a statement against interest or that the testimony is otherwise worthy of trustworthiness. And I would say that even under alleged agency relationship, that none of the above could be established such that you could render some level of trustworthiness to a young boy or a young man, in this case, a statement to a grandmother under the heat of his parents going through a divorce, who's being scolded and told that, you know, the police are going to be called if he doesn't bring this computer back. You know, that's, that's a scenario of duress, you know, and I don't think anyone should have to go through it. Unfortunately, that occurs. But I don't believe that gives such testimony, the level of trustworthiness that would create an exception to the hearsay rule. So I believe the trial court did, in fact, get it right, that the speech affidavit was consisting of hearsay only. And that was the only evidence that was being offered that Marcia, my client, did anything. That it's at her so-called direction. That was, there's no, no evidence that the lawyers did anything. There's no evidence that she did anything. There's only evidence that Ian did something. And we know he did something solely to preserve his personal records. Otherwise, he would not have built this computer. You know, I know my time is running out. You know, I believe that, you know, in essence, Occam's razor has some implication here that where there is more than one explanation for an outcome, the simplest answer is the correct one. Was this an extension of divorce proceedings? Absolutely. And that's why I believe it was proper for the court to enter summary judgment and, in fact, award sanctions. Unless you have further questions, I thank you for my time. Thank you. Mr. Bowers. Yes. Your mic is off. I just said all my best things, too. Now you can start again. Thank you. The idea that the appellee in this case's understanding of who the co-conspirators was did not include Ian Speece cannot be taken seriously, considering that they engaged in absolutely no discovery in the case. So they never asked us who the co-conspirators were. So their understanding of who that was does not signify any change in any theory of appellant's case. I wanted to the it is not at all implausible what the appellant has alleged in this case. Marsha Speece, the appellee, admitted that an issue in the divorce was whether or not this company had an ongoing stream of income. The idea that she would want to have someone look at that computer to either establish the opposite or to destroy evidence to support Mr. Speece, that Mr. Speece could rely on, is not at all implausible. The fact that she would ask her son to carry this big thing out to the car is also not at all implausible. But how do you explain your client's testimony at the divorce proceeding where he apparently said all the parts were there? Gladly. It's not exactly what, you know, he's colored that a little bit and he's only chosen portions of what was said. And this is all explained in the briefing. But and this is exactly why these issues go to trial. Mr. Speece is an extremely technical person. When he's asked if that computer has what it takes to operate, his answer is yes, because it did. All the computer needs to operate is that solid state hard drive. So it had all the pieces and components necessary for a computer to run. So he he takes a question. He takes it very literally and he answers it. But he also testified in that case that he did not receive back all the information and that from an operational standpoint, that the computer was was dead to the world. Something along those lines or was like a brick or something like that. So he's he's also testified in that essentially that although it had this solid state drive, it wasn't working. And the the focus on the rotary drive is is really it doesn't make a difference for the case one way or the other, because the solid state drive was still white. Whether or not the rotary drive was removed or not, which which it was. And we also know that I pointed out earlier rotary drive was removed. Why wouldn't he have said that in the divorce proceeding? Because he was only asked if it had the pieces and parts to run. That that's that's that's the the technical taking things literally kind of mind he has. And again, this is the exact reason why a jury makes this determination. They see him testifying for hours and they see that that that makes total sense based on the person that they're seeing. And I see your time is up. Sorry, I've taken up your time with the questions. Does any judge have any further questions? Well, we thank you both for your argument and the case will be submitted.